**SHELBY INSURANCE COMPANY, Appellee; Allstate Insurance Company, Appellee and Cross-Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellant and Cross-Appellee.**

[Cite as *Shelby Ins. Co. v. Ins. Co. of N. Am.* (1991), 76 Ohio App.3d 227.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP-337.

Decided Nov. 19, 1991.

*Vorys, Sater, Seymour & Pease, Richard D. Schuster* and *Katherine Spies Giumenti,* for appellees.

*Earl, Warburton, Adams & Davis* and *Dick M. Warburton, Jr.,* for appellant.

PEGGY BRYANT, Judge.

Plaintiff/cross-appellant, Allstate Insurance Company ("Allstate"), appeals from a judgment of the Franklin County Court of Common Pleas, finding that defendant/cross-appellee, Insurance Company of North America ("INA"), is not obligated to share on a pro rata basis in plaintiff's defense and settlement costs incurred in the litigation arising out of the death of Shawn English. Allstate's single assignment of error asserts:

"The trial court erred as a matter of law in holding that it was bound by the decision in *Trinity Universal Insurance Co. v. General Accident, Fire & Life Assurance Corp.*, 138 Ohio St. 488 [21 O.O. 64], 35 N.E.2d 836 (1941), to find in favor of defendant, Insurance Company of North America, on the claim made by plaintiff, Allstate Insurance Company."

The parties stipulated the pertinent facts. According to those stipulations, prior to March 19, 1983, Allstate issued a policy of homeowner's insurance to Robert Albanese. Paragraph eight of that policy states:

"Other Insurance—Family Liability Protection

"If both this insurance and other insurance apply to a loss, we will pay our share. Our share will be the proportionate amount that the limits of this insurance bears to the total limits of all applicable insurance."

On or about January 1, 1978, INA issued to the Boy Scouts of America, as the named insured, a policy of insurance which was renewed for the period January 1, 1983 to January 1, 1984 by the issuance of a general liability policy. A certificate of insurance to the renewed policy specifically "mentioned" the Boy Scout Troop 365 camping trip planned for March 19 and 20, 1983. In addition, at the time of the accident subject of these proceedings, INA also had issued to the Boy Scouts of America a certificate of excess insurance, which provided coverage from January 1, 1983 to January 1, 1984. That policy contained the following clause:

"*Other Insurance. This policy shall be excess of* and shall not contribute with insurance, self-insurance plan, fund or scheme provided to the insureds as defined in persons or entities insured (b), (c), (d), (e), (f) *under any insurance policy*, self-insurance plan, fund or scheme *available to such insured including but not limited to Homeowner's Insurance*, Personal Automobile Liability Insurance, General Liability Insurance, Automobile Liability Insurance and any other applicable insurance. In the absence of such other insurance, self-insurance, fund or scheme, this insurance shall apply as primary. Amounts payable on behalf of the named insured or an insured under such other insurance, self-insurance, fund or scheme shall reduce the limits of liability of this policy." (Emphasis added.)

On or about March 19, 1983, Albanese was a volunteer working on behalf of the Boy Scouts of America, and as a scout leader was covered by the insurance INA issued to the Boy Scouts of America. In his capacity as a scoutmaster for Troop 365, he took a group of eight boy scouts on an overnight scouting expedition. During the course of the expedition, which was supervised in part by Albanese, Shawn English, one of the members of the boy scout troop, fell from a ledge and was killed.

The estate of Shawn English initiated litigation against Albanese. Allstate undertook the defense of Albanese, INA refusing to share in his defense. INA, however, undertook the defense of the Boy Scouts of America during the course of the English litigation. Similarly, while INA refused to contribute toward a settlement of the claims against Albanese, INA provided funds to settle the claim of the English estate against Boy Scouts of America. As a result of the litigation, INA's policy annual aggregate deductible was exhausted, INA opened a file on the English estate's claim, and the excess policy paid for the defense of the Boy Scouts of America.

When the English litigation was settled, Allstate filed the present action against INA, seeking a pro rata recovery against INA for the settlement and defense costs of the English litigation with respect to Albanese.

On the stipulated facts, the matter was referred to a referee, who found that INA was not liable to share pro rata in Allstate's expenses. The trial court adopted the referee's recommendation, finding itself bound by *Trinity Universal Ins. Co. v. Gen. Acc., Fire & Life Assur. Corp.* (1941), 138 Ohio St. 488, 21 O.O. 64, 35 N.E.2d 836.

Allstate appeals therefrom, asserting that the trial court erred in finding itself bound by *Trinity Universal Ins. Co.* Plaintiff asserts that *Trinity Universal Ins. Co.* is distinguishable on the facts, and by its very language is limited to the facts presented therein. Further, plaintiff asserts that, under the language of the two policies herein, the only equitable resolution of the dispute is to require INA to share pro rata in the expenses Allstate incurred in the English litigation with respect to Albanese.

In *Trinity Universal Ins. Co.*, two policies were at issue. The first was issued by the defendant therein, and covered the premises of the insured. A clause of that contract stated that if " * * * 'the assured carries other insurance against a loss arising out of an accident also covered by this policy, * * * and if such accident occurs within or upon the insured premises and is due either directly or indirectly * * * to an automobile * * * then this policy * * * shall be excess insurance only over and above the amount of such other insurance and the corporation shall not be liable under this policy until such

other insurance is completely exhausted.'" *Id.*, 138 Ohio St. at 488–489, 21 O.O. at 64–65, 35 N.E.2d at 836–837.

The second policy at issue in the *Trinity Universal Ins. Co.* case was issued by the plaintiff therein providing insurance covering the delivery truck which struck and killed a customer. Plaintiff's policy agreed "'* * * to pay in behalf of the insured all sums, within the limits specified * * * because of bodily injury, including death at any time resulting therefrom * * * arising out of the ownership, maintenance or use of the automobile. * * *'" *Id.* at 489, 21 O.O. at 65, 35 N.E.2d at 837. The policy also provided that if "* * * 'the named insured has other insurance against a loss covered by the policy, the company, as respects the named insured, shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability expressed in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss.'" *Id.* at 489, 21 O.O. at 65, 35 N.E.2d at 837.

In resolving the dispute between the two insurance companies involved in *Trinity Universal Ins. Co.*, the court, as plaintiff properly notes, indicated that its decision was "* * * limited to the circumstances peculiar to this particular controversy." Nonetheless, in terms of a rationale for its holding, the court first noted that defendant's policy was general, covering liability for any accidental bodily injury, including death, which occurred anywhere on the premises of the insured. By contrast, plaintiff's policy was specific, being limited strictly to liability for bodily injury or death accidently arising from operation of the insured truck. With that distinction noted, the court found that "* * * under the general rule the specific insurer is primarily liable." *Id.*, 138 Ohio St. at 491, 21 O.O. at 66, 35 N.E.2d at 838.

In addition, the Supreme Court stated in *Trinity Universal Ins. Co.* that "[t]he second thing of importance to be noted is that the policy issued by the defendant company is the only one mentioning excess insurance * * *," specifically excluding "* * * any such injuries if caused by the truck on the premises at a time when there is other coverage on the truck. * * *" *Id.* at 491, 21 O.O. at 66, 35 N.E.2d at 838.

With those two factors, the Supreme Court found that the language of defendant's policy controlled and that defendant was not liable for its proportionate share of the total coverage for any judgment that was rendered against its insured.

Application of *Trinity Universal Ins. Co.* to the present case is difficult, especially in terms of the "specific-general" analysis. Arguably, the Allstate policy is more specific than the INA policy, in that Allstate insured Albanese, whereas INA insured the Boy Scouts of America, insuring Albanese only by

virtue of his association with the Boy Scouts as a scout leader. However, the policies are subject to a reverse argument, in that INA insured this specific event, whereas Allstate insured Albanese generally under his homeowner's policy.

Nonetheless, despite the difficulty in applying portions of *Trinity Universal Ins. Co.* to the present case, we note that, as in *Trinity Universal Ins. Co.*, only INA's policy mentions excess insurance; Allstate's policy does not contain such language. The language of the two policies herein is determinative.

Specifically, although Allstate seeks to distinguish *Trinity Universal Ins. Co.* on its facts, arguing that the case was based on a generally accepted principle that the insurance covering a vehicle is primary, see *Motorists Mut. Ins. Co. v. Lumbermens Mut. Ins. Co.* (1965), 1 Ohio St.2d 105, 30 O.O.2d 428, 205 N.E.2d 67, INA has through the language of its policy made Allstate the primary insurer in the present case. Its policy clearly provides that it is excess to homeowner's insurance, thus rendering any homeowner's insurance primary under the terms of the policy. By contrast, Allstate's policy makes no such attempt, and, indeed, does not suggest that its insurance is excess to any other insurance available to the insured; rather, Allstate's policy simply seeks to share the proportionate amount of expenses incurred on behalf of its insured.

Indeed, the syllabus of *Motorists Mut. Ins. Co.* suggests the result the trial court reached:

"Where one insurer insures against a loss and provides that it shall not be liable for a greater proportion of the loss than the applicable limit of liability stated in its declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, and another insurer insures against the same loss and additionally provides that such insurance shall be excess insurance over any other valid and collectible insurance available to its insured, effect should be given to the latter provision, and the first insurer should be held to be the primary insurer."

While Allstate urges that the *Motorists Mut. Ins. Co.* opinion is distinguishable on its facts, even the language of the opinion supports the trial court's decision. Specifically, the opinion states that "'* * * [w]hen the driver's insurance is excess, it necessarily follows that the insurance of the owner is primary, and therefore the owner's insurer must bear the entire loss to the extent of the limits of the policy.'" *Id.*, 1 Ohio St.2d at 108, 30 O.O.2d at 429, 205 N.E.2d at 69. In this case, by the language INA employed in its policy, it became the excess insurance to any homeowner's policy. Had Allstate included such excess language in its own policy, a pro rata sharing of

expenses may have been obtained under *Buckeye Union Ins. Co. v. State Auto. Mut. Ins. Co.* (1977), 49 Ohio St.2d 213, 3 O.O.3d 330, 361 N.E.2d 1052. Allstate having failed to incorporate excess language into its policy, the language of INA's policy creates a primary-excess situation between the two policies. See *Ohio Cas. Ins. Co. v. Carriers Ins. Co.* (Dec. 27, 1979), Preble App. No. CA 262, unreported.

While no Ohio case is factually identical to the circumstances herein, in *Midwestern Indemn. Co. v. Smith* (Mar. 10, 1989), Allen App. No. 1–87–8, unreported, 1989 WL 22039, the Third District Court of Appeals followed the Sixth Circuit's decision in *P.L. Kanter Agency, Inc. v. Continental Cas. Co.* (C.A.6, 1976), 541 F.2d 519. In *Midwestern Indemn. Co.*, the plaintiff therein, Midwestern Indemnity Company ("Midwestern"), issued a policy to the lessees on a land contract; and the language of one clause of that policy stated:

" 'Other Insurance. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.' "

The defendant therein, Nationwide Mutual Fire Insurance Company ("Nationwide") issued a policy to the lessors under the land contract, which policy contained an excess coverage provision:

" 'This insurance shall apply as excess insurance over any other valid and collectible insurance which would apply in the absence of this policy, except insurance written specifically to cover an excess over the limits of liability applicable to Section II of this policy.' "

After the residence was destroyed by fire, Midwestern contended that the pro rata clause in its policy was irreconcilable with the excess clause in the policy issued by Nationwide, and that the court should therefore impose a pro rata share of the loss on each of the insurance companies.

The court in *Midwestern Indemn. Co.* noted and relied on the Sixth Circuit's declaration in *Kanter:*

" ' * * * "when an excess clause * * * conflicts with another 'other insurance' clause, and more particularly, a 'pro rata' clause, in a second policy, the excess clause controls and is to be given full effect." ' " 541 F.2d at 522–523.

Consistent with *Kanter,* the court in *Midwestern Indemn. Co.* found Midwestern to be the primary insurer and Nationwide to provide only excess coverage.

In accordance with the rationale of the cases cited herein, we find no error in the judgment of the trial court. For the reasons set forth herein, we

overrule plaintiff's single assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

STRAUSBAUGH and PETREE, JJ., concur.